Slip Op. 20-187

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| CALGON CARBON CORPORATION AND CABOT NORIT AMERICAS, INC., <br><br>   Plaintiffs, <br><br>and <br><br>CARBON ACTIVATED TIANJIN CO., LTD. AND CARBON ACTIVATED CORPORATION, ET AL., <br><br>   Consolidated Plaintiffs, <br><br>   v. <br><br>UNITED STATES, <br><br>   Defendant, <br><br>and <br><br>CARBON ACTIVATED TIANJIN CO., LTD. AND CARBON ACTIVATED CORPORATION, ET AL., <br><br>   Defendant-Intervenors. | Before: Mark A. Barnett, Judge <br>Consol. Court No. 18-00232 |

## OPINION AND ORDER

[Remanding the remand redetermination in the tenth administrative review of the antidumping duty order on certain activated carbon from the People's Republic of China.]

Dated: December 21, 2020

David A. Hartquist, R. Alan Luberda, John M. Herrmann, II, and Melissa M. Brewer, Kelley Drye & Warren LLP, of Washington, DC, for Plaintiffs/Defendant-Intervenors Calgon Carbon Corp. and Cabot Norit Americas, Inc.


Francis J. Sailer, Dharmendra N. Choudhary, and Jordan C. Khan, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of Washington, DC, for Consolidated Plaintiffs/Defendant-Intervenors Carbon Activated Tianjin Co., Ltd., Carbon Activated Corporation, Datong Juqiang Activated Carbon Co., Ltd., and Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd.

Antonia R. Soares, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States.  With her on the brief were Jeffrey B. Clark, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Assistant Director.  Of counsel on the brief was Ayat Mujais, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, DC.

Barnett, Judge: This matter is before the court following the U.S. Department of Commerce's ("Commerce" or "the agency") redetermination pursuant to court remand in the tenth administrative review ("AR10") of the antidumping duty order on certain activated carbon from the People's Republic of China for the period of review April 1, 2016, through March 31, 2017 ("the POR").  See Final Results of Redetermination Pursuant to Court Remand ("Remand Results"), ECF No. 75-1;[1] see generally Calgon Carbon Corp. v. United States, 44 CIT ___, 443 F. Supp. 3d 1334 (2020) ("Calgon

---

[1] The administrative record filed in connection with the Final Results is divided into a Public Administrative Record ("PR"), ECF No. 29-1, and a Confidential Administrative Record ("CR"), ECF No. 29-2.  Parties submitted public and confidential joint appendices containing record documents cited in their briefs.  See Non-Confidential J.A., ECF Nos. 55-1 (Vol. I), 55-2 (Vol. II), 55-3 (Vol. III); Confidential J.A. ("CJA"), ECF Nos. 54-1 (Vol. I), 54-2 (Vol. II), 54-3 (Vol. III).  The administrative record associated with the Remand Results is contained in a Public Remand Record, ECF No. 76-2, and a Confidential Remand Record, ECF No. 76-3.  Parties submitted public and confidential joint appendices containing record documents cited in their briefs on the Remand Results.  See Public Index to Remand J.A., ECF No. 83; Confidential Index to Remand J.A. ("RCJA"), ECF No. 82.  Citations are to the confidential joint appendices unless stated otherwise.

(AR10) I"); *Certain Activated Carbon From the People's Republic of China*, 83 Fed. Reg. 53,214 (Dep't Commerce Oct. 22, 2018) (final results of antidumping duty admin. review; 2016–2017) ("*Final Results*"), ECF No. 29-4, and accompanying Issues and Decision Mem., A-570-904 (Oct. 16, 2018) ("I&D Mem."), ECF No. 29-5, as amended by *Certain Activated Carbon From the People's Republic of China*, 83 Fed. Reg. 58,229 (Dep't Commerce Nov. 19, 2018) (am. final results of antidumping duty admin. review; 2016–2017).[2]

On June 7, 2017, Commerce initiated AR10. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 82 Fed. Reg. 26,444, 26,445 (Dep't Commerce June 7, 2017), PR 14, CJA (Vol. I) Tab 6. For the *Final Results*, and relevant to this discussion, Commerce valued Respondents' factor of production ("FOP") for carbonized material using Thai import data under Harmonized Tariff Schedule ("HTS") subheading 4402.90.1000. *See* I&D Mem. at 14. The surrogate data included imports from France and Japan into Thailand. *Id.* at 15–16. In the *Final Results*, Commerce also revised its preliminary decision to rely on Thai financial statements to value financial ratios and, instead, relied on financial statements of a Romanian company. *See id.* at 25–28. Commerce then made several adjustments to the Romanian company's financial statements. *See Calgon (AR10) I*, 443 F. Supp. 3d at 1351.

---

[2] The court's opinion in *Calgon (AR10) I* resolved substantive issues concerning the *Final Results* and provides additional factual background; familiarity with that opinion is presumed.

Plaintiffs Calgon Carbon Corporation and Cabot Norit Americas, Inc. filed a motion for judgment on the agency record challenging certain aspects of the *Final Results*. *See id.* at 1338. Consolidated Plaintiffs Carbon Activated Tianjin Co. Ltd. ("Carbon Activated"), Carbon Activated Corporation ("CAC"), Datong Juqiang Activated Carbon Co., Ltd. ("DJAC"), and Ningxia Guanghua Cherishmet Activated Carbon Co., Ltd. (collectively, "Carbon Activated Group")[3] also filed a motion for judgment on the agency record challenging various aspects of the *Final Results*. *See id.* at 1338–39.

In *Calgon (AR10) I*, the court remanded the *Final Results*: (1) to allow the agency to reconsider or revise its decision to include imports from France and Japan in the carbonized material surrogate data, *id.* at 1349–50; and (2) to provide "an opportunity to address [Respondents'] objections to the adjustments to [the] financial statements," *id.* at 1354. In the Remand Results, Commerce made certain adjustments to the surrogate financial statements. Remand Result at 7–13, 23. With respect to surrogate data for carbonized material, Commerce excluded the Japanese imports, *id.* at 5–7, 22, and continued to include the French imports, *id.* at 4–5, 17–22.

Before the court, Carbon Activated Group challenges Commerce's continued inclusion of French imports in the Thai data. *See* Consol. Pls.' Cmts. in Opp'n to Remand Redetermination ("CAG's Opp'n Cmts."), ECF No. 77. Defendant United States ("the Government") filed comments supporting Commerce's Remand Results.

---

[3] Consistent with *Calgon (AR10) I*, the court refers to Consolidated Plaintiffs as "Carbon Activated Group." The court refers to those Consolidated Plaintiffs that participated in the underlying administrative proceedings—CAC, Carbon Activated, and DJAC—together, as "Respondents."

See Def.'s Reply in Supp. of the Dep't of Commerce's Remand Redetermination ("Gov't's Reply"), ECF No. 81. No party challenges Commerce's decision to exclude Thai import prices from Japan or the adjustments made to the surrogate financial statements[4] and they appear to be consistent with the court's remand instructions; therefore, the court affirms those aspects of the Remand Results. However, for the following reasons, the court remands the Remand Results for Commerce to reconsider its inclusion of French imports in the Thai data in accordance with this opinion.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 516A(a)(2)(B)(iii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) (2018), and 28 U.S.C. § 1581(c) (2018). The court will uphold an agency determination that is supported by substantial evidence and otherwise in accordance with law. 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." *SolarWorld Ams., Inc. v. United States*, 41 CIT ___, ___, 273 F. Supp. 3d 1314, 1317 (2017) (quoting *Xinjiamei Furniture (Zhangzhou) Co. v. United States*, 38 CIT ___, ___, 968 F. Supp. 2d 1255, 1259 (2014)).

---

[4] Carbon Activated Group also filed comments in support of Commerce's adjustments to the surrogate financial statement and exclusion of the Japanese imports from the surrogate data for carbonized material. *See* Consol. Pls.' Cmts. in Supp. of Remand Redetermination, ECF No. 80.

# DISCUSSION

## I. Commerce's Inclusion of French Import Data

### A. Legal Framework

"When valuing factors of production in the nonmarket economy context, the statute directs that Commerce's decision 'shall be based on the *best available information* regarding the values of such factors in a market economy country or countries.'" *SolarWorld Ams., Inc. v. United States*, 910 F.3d 1216, 1222 (Fed. Cir. 2018) (quoting 19 U.S. C. § 1677b(c)(1)). Because the statute does not define "best available information," Commerce has broad discretion in selecting surrogate data. *See, e.g.*, *QVD Food Co. v. United States*, 658 F.3d 1318, 1323 (Fed. Cir. 2011).

### B. Factual and Procedural History

In the eighth and ninth administrative reviews ("AR8" and "AR9," respectively), Commerce selected Thai import data under HTS subheading 4402.90.1000 to value carbonized material but excluded imports from France into Thailand because it determined that the imports consisted of wood-based charcoal—a material that is not specific to the input in question. *See* Issues and Decision Mem. for the Final Results of [AR8], A-570-904, (Aug. 31, 2016) ("AR8 IDM") at 30–33, available at https://enforcement.trade.gov /frn/summary/prc/2016-21660-1.pdf (last visited Dec. 21, 2020); Issues and Decision Mem. for the Final Results of [AR9], A-570-904, (Nov. 1, 2017) ("AR9 IDM") at 24–26, available at https://enforcement.trade.gov/frn/summary/prc/2017-24184-1.pdf (last visited Dec. 21, 2020).

For the *Final Results* of this review, Commerce again valued carbonized material using Thai import data under HTS subheading 4402.90.1000. I&D Mem. at 14–16; Prelim. Surrogate Value Mem. (May 3, 2017), Attach. 1 ("SV Spreadsheet") at 75–76, PR 215–18, RCJA ECF pp. 17–155.[5] The Thai data include monthly quantities imported from France from May 2016 to January 2017. SV Spreadsheet at 75. Record evidence indicates that quantities imported in certain months were wood-based charcoal. *See* I&D Mem. at 15.

Specifically, a 2016 sales summary indicates that quantities imported in May, July, and August 2016 were, upon importation, classified under HTS subheading 4402.90.1000 (coconut charcoal). *See* First Surrogate Value Cmts. by DJAC and [Carbon Activated] (Sept. 15, 2017) ("Respondents' SV Cmts."), Ex. 4A at ECF p. 10, PR 116–21, RCJA ECF pp. 4–16. However, at the time of exportation from France, these same quantities were classified under HTS subheading 4402.90.00 (wood-based charcoal).[6] *See id.* at ECF pp. 13–14. Additionally, an email from an affiliate of another company subject to this review refers to the quantities imported for all months as "wood charcoal." *Id.* at ECF p. 8; *see also* I&D Mem. at 1 & n.3 (noting that Jacobi Carbons

---

[5] The documents submitted in the RCJA were not assigned tab or document numbers. For ease of identification, the court identifies the location of the documents within the RCJA using the applicable ECF page ranges. Pin citations are to the internal page numbers provided in the documents when possible but are otherwise to the ECF page numbers.

[6] The sales summary classifies quantities under HTS subheading 4402.90.00 as "unspecified charcoal." Respondents' SV Cmts., Ex. 4A at ECF p. 12–14. The Parties and Commerce accept that quantities classified under this subheading are wood-based charcoal. *See, e.g.*, Remand Results at 21 & n.63 (citation omitted); Gov't's Reply at 9.

AB and Jacobi Carbons, Inc. comprise a separate rate respondent company for purposes of this review). The record does not contain evidence concerning the composition of import quantities from France from September 2016 to January 2017. *See* I&D Mem. at 15 (noting that record evidence concerning French-origin imports into Thailand only covers part of the POR).

In *Calgon (AR10) I*, the court remanded Commerce's inclusion of imports from France in the Thai data because Commerce recognized "that the Thai data contain French imports (wood-based charcoal) for part of the POR," thereby contradicting "its finding that the record lacks information that demonstrates that French imports under HTS 4402.90.1000 were indeed wood-based charcoal." 443 F. Supp. 3d at 1349 (citation omitted). In light of this contradiction, the court could not discern the path of Commerce's reasoning. *See id.*

In the redetermination, Commerce continued to include the French imports in the Thai data. Remand Results at 4–5, 17–22. The agency explained:

> While these data indicate that some of the exports from France to Thailand during the [POR] were comprised of wood-based charcoal, the data fail to fully account for the entire quantity of French imports under HTS 4402.90.1000 during the POR because the French sales data placed on the record by the mandatory respondents only cover *a part* of the POR (April 2016-July 2016).

*Id.* at 5. The agency went on to acknowledge implicitly that quantities imported in May, July, and August 2016 (i.e., quantities considered to be wood-based charcoal upon exportation from France and coconut charcoal upon importation into Thailand) were, in fact, wood-based charcoal. *See id.* at 21 & n.63 (citing Respondents' SV Cmts., Ex. 4A at ECF p. 14 (showing all imports from France during those months to be French

exports of wood-based charcoal)). Commerce did not differentiate its treatment of French imports in this review from AR8 or AR9.[7]

Commerce stated that Respondents bore the burden "to demonstrate that all of the data under consideration [were] unreliable." *Id.* at 21 (citation omitted). Because Respondents did not provide evidence that French imports for *every* month during the relevant period were wood-based charcoal, Commerce concluded that there was not a basis to exclude the French imports. *See id.* at 21–22.

### C. Parties Contentions

Carbon Activated Group contends that substantial evidence does not support the agency's inclusion of the French imports because the imports are aberrant and render the Thai data unreliable. *See* CAG's Opp'n Cmts. at 9–10. Carbon Activated Group further contends that Commerce's decision to include the French imports improperly deviates from agency's treatment of the French imports in AR8 and AR9. *See id.* at 21. Finally, Carbon Activated Group attempts to distinguish authority relied on by Commerce, *id.* at 10–14, and cites case law and agency determinations that, in its view, demonstrate the unreasonableness of including the French imports, *see id.* at 18–22.

The Government contends that Carbon Activated Group failed to carry its burden of establishing that all of the French imports were wood-based charcoal. *See* Gov't's Reply at 8–11. According to the Government, although Commerce has excluded entire

---

[7] Commerce acknowledged Respondents' argument that in AR9 the agency excluded the French imports from the Thai data, *see* Remand Results at 15–16, but did not respond to it.

Consol. Court No. 18-00232                                                                                               Page 10

country-specific datasets from its surrogate value calculation in other reviews, Carbon Activated Group has not shown that such treatment is appropriate for the portion of the Thai dataset at issue.  *See id.* at 11–14.  The Government asserts that Commerce's exclusion of the French imports in AR9 did not require Commerce to exclude the French imports in this review.  *Id.* at 16.

### D. Commerce's Inclusion of the French Imports in the Thai Surrogate Data is Unsupported by Substantial Evidence

Although interested parties bear "the burden of creating an adequate record," "Commerce must, nonetheless, support its decision with substantial evidence."  *SeAH Steel VINA Corp. v. United States*, 950 F.3d 833, 847 (Fed. Cir. 2020) (citations omitted).  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established."  *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).  Here, Commerce failed to support with substantial evidence its conclusion that the Thai data inclusive of the French imports were the best available information to value carbonized material.

Commerce acknowledged that the May, July, and August 2016 import quantities (i.e., quantities classified as coconut charcoal upon importation) were, in fact, wood-based charcoal.  *See* Remand Results at 21 & n.63 (citing Respondents' SV Cmts., Ex. 4A at ECF p. 14).  In so doing, Commerce's finding aligned with its findings in AR8 and AR9 that all Thai imports from France during the relevant periods consisted of wood-based charcoal, notwithstanding their classification as coconut-based charcoal. *Compare* Respondents' SV Cmts., Ex. 4A at ECF p. 8 (email from Raphaele Bro-

Capron and Isabelle Laidin stating that the quantities are "wood charcoal"), *with* AR9 IDM at 25 (referring to an affidavit by Raphaele Bro-Capron and Isabelle Laidin attesting that the French imports were wood-based charcoal), *and* AR8 IDM at 32–33 (same).

      Commerce did not identify evidence indicating that any quantity imported during any subsequent month was something other than wood-based charcoal. Indeed, the court afforded the Government an additional opportunity "to clarify whether the record contains any positive evidence that any other imports of charcoal into Thailand from France differed from the prior imports and, in fact, consisted of coconut-based charcoal or other non-wood[-]based charcoal." Order (Dec. 4, 2020), ECF No. 84. The Government responded by providing excerpts from Exhibit 4A to Respondents' SV Comments. *See* Ltr. From Antonia R. Soares to the Court (Dec. 11, 2020), ECF No. 85. These documents were consistent with Commerce's findings that Respondents failed to provide evidence affirmatively indicating that all Thai imports from France during the POR consisted of wood-based charcoal. Remand Results at 4–5. However, the documents also do not provide affirmative evidence that anything had changed with respect to the Thai imports from France to suggest that it was reasonable for Commerce to find that after more than two years of shipping only wood-based charcoal to Thailand, France was suddenly shipping coconut-based charcoal. While each administrative review is a separate exercise of Commerce's authority and allows for different conclusions based on different facts in the record, the record before the court does not contain such different facts. Because the record as informed by AR8 and AR9 does not support a finding that the French imports into Thailand were anything other

Consol. Court No. 18-00232            Page 12

than wood-based charcoal, Commerce's inclusion of the French imports is not supported by substantial evidence and, thus, unlawful.

       The Government attempts to avoid this outcome by faulting Carbon Activated Group for not providing evidence that the French data were wood-based charcoal for every month during the relevant period. *See* Gov't's Reply at 9–10 (citing Remand Results at 21). This contention is unavailing. As discussed above, evidence in this review combined with Commerce's findings in AR8 and AR9 create a reasonable inference that all French imports were wood-based charcoal. Commerce failed to cite any evidence—much less substantial evidence—rebutting that inference and, thus, failed to provide a reasoned explanation for its decision to use the Thai data inclusive of the French imports. Under these circumstances, the issue is not that Carbon Activated Group failed to develop the record, but that Commerce failed its statutory directive to support its decision that the Thai data inclusive of French imports was the "best available information" with which to value carbonized material with substantial evidence. *See SeAH Steel*, 950 F.3d at 847 (citations omitted).[8]

---

[8] The Parties also dispute the applicability of *Calgon Carbon Corp. v. United States*, 35 CIT 234 (2011) ("*Calgon (AR1)*"). *See* CAG's Opp'n Cmts. at 20; Gov't's Reply at 17. The Government contends that *Calgon (AR1)* is distinguishable because, here, the issue is whether a country-specific dataset within overall import data is reliable. *See* Gov't's Reply at 17. Such a factual distinction does not diminish the relevance of the court's statement in *Calgon (AR1)* that "Commerce must do more than erect roadblocks to respondents' fair arguments" and "must select the best available information and substantially support its decisions." 35 CIT at 248.

Consol. Court No. 18-00232                                                      Page 13

For the foregoing reasons, the court remands Commerce's selection of Thai data inclusive of French imports to determine the surrogate value for carbonized material.[9]

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby

**ORDERED** that Commerce's Remand Results, are remanded; it is further

**ORDERED** that, on remand, Commerce shall, consistent with this Opinion, reconsider its surrogate value for carbonized material; it is further

**ORDERED** that Commerce shall file its remand redetermination on or before March 22, 2021; it is further

**ORDERED** that subsequent proceedings shall be governed by USCIT Rule 56.2(h); and it is further

**ORDERED** that any comments or responsive comments must not exceed 4,000 words.

/s/     Mark A. Barnett
Mark A. Barnett, Judge

Dated: December 21, 2020
        New York, New York

---

[9] The court need not reach the Parties' arguments concerning whether Commerce has a practice of not disaggregating surrogate data and whether such a practice was warranted in this case, see CAG's Opp'n Cmts. at 4–8; Gov't's Reply at 11–14, because substantial evidence does not support Commerce's inclusion of the French imports—in whole or in part.